IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

EZEKIEL DAVIS,             )
                                 )
          Plaintiff,         )
                                 )
                                 )     CIV-05-558-HE
v.                              )
                                 )
RON WARD, et al.,         )
                                 )
          Defendants.     )

SUPPLEMENTAL REPORT  AND  RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se*, brings this civil rights action pursuant to

42 U.S.C. §1983 asserting various violations of his constitutional rights.   The matter has

been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28

U.S.C. §636(b)(1)(B).  The undersigned previously considered and recommended the denial

of Plaintiff's motion for a temporary restraining order. (Doc. # 21).  District Judge Heaton

adopted the Report and Recommendation and denied Plaintiff's motion for a temporary

restraining order. (Doc. 25).  Defendants have now moved to dismiss the cause of action or,

alternatively, for summary judgment on the basis of Plaintiff's failure to exhaust

administrative remedies as required by 42 U.S.C. § 1997e(a), to which Plaintiff has

responded. (Docs. # 38, 43). As directed by the undersigned, Defendants have also caused

the filing of a special report consistent with <u>Martinez v. Aaron</u>, 570 F.2d 317 (10th Cir. 1978).

(Doc. # 37).  For the following reasons, it is recommended that Defendants' Motion to

1

Dismiss be granted due to Plaintiff's failure to exhaust administrative remedies concerning all of the claims asserted in his Complaint.

I. Background

      In Plaintiff's Complaint, Plaintiff alleges constitutional deprivations concerning the conditions of his confinement at Oklahoma State Penitentiary ("OSP") and Oklahoma State Reformatory ("OSR").  Plaintiff has named as Defendants the former Director of the Oklahoma Department of Corrections ("DOC") Ron Ward, OSR Warden Lenora Jordan, OSR Assistant Warden Jimmy Martin, and OSR officials Diana Cypert and Martha Jones. Plaintiff has been incarcerated since March 1990 serving a sentence of life imprisonment for a first degree murder conviction.  Plaintiff's Consolidated Record Card ("CRC") reflects that he was transferred to OSP on September 21, 2001, that he was transferred to OSR on November 6, 2003, and that he was re-transferred to OSP on July 6, 2004.  Plaintiff's CRC also reflects a lengthy record of disciplinary misconducts. Special Report, Att. 1.

      Plaintiff's allegations in his Complaint are often duplicative and vague with respect to specific dates and the participation of correctional officials.  In counts one and two in the Complaint, Plaintiff alleges that his Eighth and Fourteenth Amendment rights were violated when correctional officials "fail[ed] to protect Plaintiff from being robbed" by other inmates. In support of this claim, Plaintiff alleges that on December 10, 2003, he overheard OSR case manager Martha Jones "telling her inmate boy-friend that I'm a 'stalker'...." On that same date he alleges he "sent a 'Request to Staff' to Case Manager Martha Jones that asked her to cease from telling her inmate boyfriend and his friends about confidential information in

my institutional record." Plaintiff alleges he "told Martha Jones that by telling other inmates about what was in [his] institutional record [she] could place [his] life in damage [sic]." He alleges that after he was released from the disciplinary segregation unit (after he was apparently found guilty of the institutional misconduct issued by Defendant Jones), he was "returned to the unit where Martha Jones ... would be my case manager" on March 8, 2004. Plaintiff contends that on May 18, 2004, he was "robbed by Martha Jones['] inmate boy-friend at knife point [and] 6 to 8 inmate[s] took my canteen." Plaintiff alleges that he stabbed one of the assaulting inmates in self-defense. Plaintiff also contends that OSR Assistant Warden Martin did not place "separatees" between Plaintiff and the inmates who robbed him even though Plaintiff requested the placement of "separatees" in his institutional record concerning those inmates. He further alleges that Defendant Martin "placed Plaintiff's name in the inmates['] misconducts which result[ed] in [his] being labelled [sic] a 'snitch.'"

Plaintiff includes additional allegations in counts one and two of the Complaint that are unrelated to the claim of deliberate indifference to his safety. He alleges Defendant Jones "responded [to his Request to Staff directed to her] by threatening Plaintiff," that Defendant Jones issued a "false misconduct against Plaintiff on 1-5-04," and that this misconduct was "retaliat[ion]" because Defendant "Jones would not have acted by writting [sic] false misconduct had Plaintiff not filed litigation against her...." Plaintiff inconsistently contends that the "false disciplinary charges" were issued in retaliation for a "Request to Staff" authored by Plaintiff. In yet another inconsistent assertion, Plaintiff alleges that "[o]n 1-5-04, Martha Jones wrote a false misconduct to get me moved off the unit so that my eyes could

not see/hear of her actions with inmates." He contends that Defendants Cypert and Jordan knew that Jones had filed "false disciplinary charges" against Plaintiff. Plaintiff further contends that he was placed on grievance restriction by unidentified DOC officials "in retaliation for writting [sic] a letter to D.O.C. officials."

Plaintiff alleges that on February 18, 2003, an OSP official, Crystal Pink, "forge[d] Plaintiff's name" on a document which altered his security classification level from medium to maximum security. He alleges that as a result of this forged document he "was forced on Nov. 6, 2003 to transfer" to OSR and that he filed a grievance concerning this alleged forgery. He contends that he filed this grievance with the DOC Director's office and that the DOC Director's Designee retaliated against him by placing him on grievance restriction for one year from September 29, 2003 until September 28, 2004.

In count three of the Complaint Plaintiff alleges a "civil rights conspiracy" pursuant to 42 U.S.C. §§ 1985 and 1986 based on the "Failure to Protect Plaintiff From Prison Officials and Employees['] Harassment and Retaliation." In support of this claim, he refers to the alleged forgery at OSP of his signature on a document which he contends caused him to be "forced to transfer to O.S.R. on Nov. 6, 2003." He alleges that "D.O.C. officials intentional [sic] failed to act when Plaintiff file [sic] grievance about Crystal Pink's actions...." and that he was "punish [sic] by threats and retaliation from D.O.C. officials."

In another claim, Plaintiff contends that "Assistant Warden Jimmy Martin... show[ed] reckless, malicious intent when Plaintiff pointed out the inmates that had robbed [him] at knife point [and] Jimmy Martin intentionally lied claiming he would file separatees as I

4

requested [but] instead Jimmy Martin wrote those inmates up - or maybe Martha Jones did, however, 6 to 8 inmates received misconducts for robbing me [and] my name was in their paper-work [and] Jimmy Martin transferred <u>all</u> 6 to 12 inmates to the Oklahoma State Penitentiary ("O.S.P.") without placing separatees as I had requested in a 'Request to Staff.'"

Plaintiff further alleges that unidentified "D.O.C. officials allowed Martha Jones to retaliated [sic] even though it was clear that she was lieing [and] Lenora Jordan Warden showed deliberate indifference when Plaintiff filed appeal and the Director's Designee Melinda Guilfoyle also turn [sic] a deaf ear to Plaintiff....The actions of D.O.C. officials are in concert to retaliate against Plaintiff and they are involved in a conspiracy."

Plaintiff alleges he wrote certain DOC officials who "failed to act."  He also alleges that a "conspiracy" and "retaliation" has "taken place against him for - due to [sic] Plaintiff's pending litigation and due to Plaintiff's accessing the court...."  He further alleges that unidentified "D.O.C. officials knew that Plaintiff was going to come up for parole Aug. 2004, so did Martha Jones....[and] D.O.C. officials did allow Plaintiff to be retaliated against by Martha Jones and acted in a concerted effort with malicious intent to cause Plaintiff harm [and] harm was done."

II. <u>Standard of Review</u>

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Hall v.</u>

Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991).  In reviewing the sufficiency of the complaint, the court presumes all of the plaintiff's factual allegations to be true and construes them in the light most favorable to the plaintiff. Id.  A *pro se* plaintiff's complaint must be broadly construed under this standard. Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the "broad reading" of *pro se* complaints dictated by Haines "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall, 935 F.2d at 1110.  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).

III. Section 1983 Challenge to Disciplinary Proceeding is Premature

Plaintiff seeks damages under 42 U.S.C. § 1983 for, *inter alia*, the alleged issuance of a "false" misconduct on January 5, 2004, by Defendant Jones.  He contends that Defendant Jones filed the allegedly false misconduct in retaliation for Plaintiff's exercise of various rights, including naming Defendant Jones as a defendant in other litigation and submitting a request to staff to her in December 2003.  Plaintiff's documentary evidence attached to his Complaint reflects that an offense report was issued against Plaintiff at OSR by Defendant Jones on January 5, 2004, charging him with "menacing," that Plaintiff was found guilty following a disciplinary hearing of the misconduct offense of "using abusive language," and that the misconduct and sanctions imposed for the misconduct were affirmed in an appeal to the DOC Director.

Plaintiff's cause of action seeking damages for the alleged false and retaliatory

disciplinary charge should be dismissed for failure to state a claim for relief.  In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court recognized that damages may not be recovered in a 42 U.S.C. §1983 action "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless the plaintiff first proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254." <u>Id.</u> at 487.  Three years later, in <u>Edwards v. Ballisok</u>, 520 U.S. 641 (1997), the Supreme Court extended the holding in <u>Heck</u> to actions under 42 U.S.C. § 1983 challenging prison disciplinary proceedings.  The Court concluded that a claim for damages and equitable relief brought by a state prisoner challenging the validity of procedures used to deprive the inmate of earned credits is not cognizable under 42 U.S.C. § 1983 unless the prisoner can demonstrate that the sanctions imposed for the misconduct have previously been invalidated. <u>Edwards</u>, 520 U.S. at 643.

Plaintiff has failed to demonstrate that the misconduct issued against him in January 2004 and the sanctions imposed therein have been invalidated.  Therefore, his request for damages and other relief with respect to his claim of a false and retaliatory misconduct is premature under <u>Heck</u> and <u>Balisok</u> and should be dismissed without prejudice for failure to

state a claim upon which relief can be granted.[1]

IV. Exhaustion of Administrative Remedies

In 1995, the Prison Litigation Reform Act of 1995 ("PLRA") was enacted. One provision of the PLRA, codified at 42 U.S.C. §1997e(a), directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This provision has been interpreted by the Supreme Court to apply "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Booth v. Churner, 532 U.S. 731, 741 (2001). Section 1997e(a) "imposes a pleading requirement on the prisoner," who must "(1) plead his claims with 'a short and plain statement .... showing that [he] is entitled to relief,' in compliance with Fed. R. Civ. P.

---

[1]In a previous 42 U.S.C. § 1983 action filed by Plaintiff in this Court, Plaintiff sought monetary damages and equitable relief based on a similar claim that the misconduct charge filed against him at OSR in January 2004 was based on false allegations, that Defendant Jones and another OSR official conspired against Plaintiff and arbitrarily fabricated the misconduct charge in retaliation for a request to staff he had submitted to Defendant Jones in December 2003 and for his unsuccessful attempt in December 2003 to add Defendant Jones and other OSR officials to a civil rights action he had filed in the United States District Court for the Eastern District of Oklahoma. Ezekiel Davis v. Martha Jones, et al., No. CIV-04-819-HE. In an Order entered in that action on August 24, 2004, this cause of action was dismissed by District Judge Heaton without prejudice for failure to state a claim for relief consistent with Heck, supra, and Balisok, supra. Plaintiff did not appeal this decision.

8(a)(2), and (2) 'attach[ ] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.'" Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003), cert. denied, 543 U.S. 925 (2004)(quoting Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000)).  "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under §1997e." Id. (quotation omitted).  "Defendants with a colorable argument based on lack of exhaustion ... may raise it in a dispositive motion, to be addressed promptly by the court." Id. at 1212.  Under these circumstances, the  "court may consider the attached administrative materials" provided by the Plaintiff, or if none are provided by the Plaintiff then the court may consider administrative materials or a declaration submitted by the Defendant. Id.   The "PLRA contains a total exhaustion requirement" and "the presence of unexhausted claims in [a] complaint" requires the dismissal of the complaint without prejudice. Ross v. County of Bernalillo, 365 F.3d 1181, 1189 (10th Cir. 2004).

Defendants have moved to dismiss the cause of action on the ground that Plaintiff has failed to exhaust available administrative remedies with respect to all of the claims alleged in his Complaint.  DOC has a well-established four-step administrative grievance procedure for grieving any aspect of an inmate's conditions of confinement.  Special Report, Att. 24 (DOC OP-090124, Inmate/Offender Grievance Process).  The first step of the procedure requires the inmate to informally talk with an appropriate prison official within 3 days of the incident. If this does not resolve the issue, the prisoner must submit a Request to Staff to the

appropriate prison official within seven days of the incident. If the prisoner is not satisfied with the response received from this official, or if prison officials do not respond, the third step of the procedure requires the inmate to submit a formal grievance to the head of the facility within fifteen days of the date of the incident or the date of the response to the Request to Staff, whichever is later.  If still not satisfied with the response received from the facility head, the fourth step of the procedure is an appeal of the facility head's decision to the DOC Director or DOC Director's designee as the final reviewing authority. Id.

Plaintiff has attached to the Complaint copies of administrative grievance documents. These documents show that Plaintiff exhausted administrative remedies only as to his claim of a false and retaliatory misconduct and his claim requesting a transfer to a medium security facility and alleging an OSP staff member's "forgery" of his signature on a transfer packet at OSP.  Many of the Request to Staff forms attached to Plaintiff's Complaint involve matters unrelated to the claims asserted in the Complaint, including complaints about the opening of his personal mail, requesting the application of an earned credit policy that was in effect in 1991, and allegations that a "Sgt. Bolding" was showing bias against him and harassing him on the basis of his race.   In many instances, Plaintiff submitted Request to Staff forms to officials at OSP and OSR but failed to follow through by submitting formal grievances or administrative appeals, as required by the third and fourth steps of the administrative grievance procedure.   Plaintiff submitted a Request to Staff in June 2004 to OSR Warden Jordan in which Plaintiff alleged that his "former Case Manager Martha Jones" had caused him to be assaulted by informing inmates about "certain statements" in his institutional

record. Complaint, Ex. 14.  The Request to Staff reflects Plaintiff received a timely response to this Request to Staff in which Plaintiff was advised "Once Again there is no evidence to substantiate your claims.  Ms. Jones did not tell other inmates of anything in your record. You claim that you were robbed and attacked by 6 to 8 inmates outside B Unit.  The video tape does not substantiate this.  You retaliated by stabbing inmate Rogers in the kitchen.." Id.  There is no evidence that Plaintiff filed a formal grievance or sought further administrative review of this issue.  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

In his response to Defendants' Motion to Dismiss, Plaintiff asserts that there was no administrative grievance procedure available to him because he was placed on administrative grievance restriction by DOC officials.  In a letter addressed to Plaintiff at OSP dated September 29, 2003, DOC Director's Designee Guilfoyle stated that Plaintiff's administrative appeal had been reviewed and was being returned unanswered because Plaintiff did not include a Request to Staff or response to the grievance from the reviewing authority and because the grievance concerned more than one issue, which was not allowed. This letter also informed Plaintiff that he had previously been warned in a letter dated January 9, 2003, that further abuses of the grievance process would result in the imposition of restrictions and that because of his repeated refusal to follow the inmate grievance process he was being placed on grievance restriction from September 29, 2003 through September 28, 2004.  Plaintiff was advised in this letter that he was required "to follow steps outlined

in Section IX of [DOC procedural policy] OP-090124 entitled Inmate/Offender Grievance Process prior to submitting a grievance at any level." Special Report, Att. 16.

The statute creating the administrative remedy exhaustion requirement, 42 U.S.C. § 1997e(a), requires inmates to exhaust "such administrative remedies as are available...." In unpublished decisions, the Tenth Circuit Court of Appeals has considered circumstances in which the prisoner alleged that prison officials prevented him from exhausting administrative remedies. See Smith v. Beck, No. 04-7102, 2006 WL 292012 (10th Cir. Feb. 8, 2006)(citing cases and rejecting prisoner's claim that his transfer to another prison and prison official's refusal to allow him to take his property with him prevented him from exhausting administrative remedies)(unpublished op.). Plaintiff was not prevented from exhausting his administrative remedies because of his placement on grievance restriction. He was advised in the letter from DOC Director Designee's Guilfoyle that during the time he was on grievance restriction he must follow the procedure set forth in DOC policy, OP-090124, governing the filing of grievances for inmates placed on grievance restriction. This policy provides that inmates placed on grievance restriction may submit grievances during the restriction period as long as they "show cause why they should be permitted to grieve." Special Report, Att. 24 (DOC OP-090124, Inmate/Offender Grievance Process, at IX(B)). The policy requires a grievance restricted inmate to follow certain procedures, including verifying in an affidavit accompanying the grievance that the grievance is true and correct to the best of the inmate's knowledge and belief, and attaching a list of all grievances submitted by the inmate in the previous twelve months. Id. There is no evidence that

12

Plaintiff attempted to submit a grievance in compliance with the grievance restriction process outlined in DOC policy.  Accordingly, DOC officials did not prevent Plaintiff from filing grievances as to all of the claims asserted in his Complaint by placing him on grievance restriction for a year.  Plaintiff has failed to exhaust his available administrative remedies concerning all of the claims asserted in his Complaint, and this failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) bars review of the merits of his claims.   Accordingly, the cause of action should be dismissed without prejudice on this basis.

<u>RECOMMENDATION</u>

Based on the foregoing findings, it is recommended that Defendants' Motion to Dismiss (Doc. # 38) be GRANTED and the cause of action be DISMISSED without prejudice due to Plaintiff's failure to exhaust administrative remedies.  It is further recommended that Plaintiff's Motion for Trial by Jury (Doc. # 41) be DENIED and that Plaintiff's Application [to File] Brief In Excess of Twenty-five Typewritten Pages (Doc. # 42) be GRANTED.  Plaintiff is advised of his right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by _____April 17th____, 2006, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The Plaintiff is further advised that failure to make timely objection to this Supplemental Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein. <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir. 1991).

This Supplemental Report and Recommendation disposes of all issues referred to the

undersigned Magistrate Judge in the captioned matter.

ENTERED this _____27th_____ day of _____March_____, 2006.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE